UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at COVINGTON

CIVIL ACTION NO. 16-56-HRW

MARYANN BULLOCK, PLAINTIFF,

v. **MEMORANDUM OPINION AND ORDER**

CITY OF COVINGTON
and
JAMES C. EDIGER, DEFENDANTS.

In ancient literature, we are taught that is the wise man who builds his house upon the rock. It will withstand rain, wind and flood. It is the foolish man who builds his house upon the sand, where, when the elements strike, it will then collapse. The same can be said of a complaint filed in federal court. It, too, must be built upon a firm foundation of facts. Legal theories, alone, no matter how interesting and compelling, will not withstand even the most rudimentary inspection. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). In this case, Plaintiff MaryAnn Bullock erected a lawsuit not upon rock, but upon sand, which, although full of detail and design, falls like a house of cards.

I.

923 Cherry Street in Covington, Kentucky, has been Plaintiff's home, almost continuously since 1947. In March of 2016, she filed this lawsuit against the City of Covington and one of its employees, James Ediger broadly alleging:

> For at least 20 years, the City's acts and inactions have denied Plaintiff and her husband their rights to enjoy their family residence. And for at least 20 years, the City has affirmatively refused to discharge its statutory and ministerial duties of providing Plaintiff with the most basic of services - a street.

[Amended Complaint, Docket No. 6, p. 2].

In a 58 page, 342 paragraph Amended Complaint[1], Plaintiff alleges 14 separate counts against the City of Covington and Ediger.

In Count I, Plaintiff seeks a declaratory judgment that Cherry Street is a public street, pursuant to 28 U.S.C. § 2201. [Docket No. 6, ¶¶ 214-221]

Counts II, III, IV, V and VII allege violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

Specifically, in Count II, she claims the City violated the ADA in 2010 when it paved a portion of Cherry Street, but failed to pave her section of the street. *Id.* at ¶¶ 222-227.

In Count III, she alleges the City violated the ADA between 1991 and 2015 in not paving her portion of Cherry Street. *Id.* at ¶¶228-237.

Count IV contends the City violated the ADA when, in 2010, it adopted and implemented a policy of refusing to pave her portion of Cherry Street. *Id.* at ¶¶238-244.

Count V sets forth ADA violations based on the City's failure to install a handicap parking sign on Cherry Street in June 1995; the City's installation of "no parking" signs on Cherry Street in June 1996; and its failure to pave her section of Cherry Street in 2010. *Id.* at ¶¶245-258.

Count VII alleges intentional disability discrimination, again challenging the City's

---

[1] Plaintiff's original Complaint did not allege certain counts account Defendant Ediger.

failure since 1995 to pave her section of Cherry Street. *Id.* at ¶¶ 273-279.

In Count VI, Plaintiff claims the City violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(C)(3)(B) by failing "since 1995" to "provide her with more convenient access to her home so that she could more easily conduct her daily affairs...." *Id.* at ¶¶ 259-272.

In Count VIII, Plaintiff claims that the City violated the FHA, alleging that on several occasions in 2015, she was the victim of sexual assaults allegedly committed by City employee, James Ediger.
*Id.* at ¶¶ 280-287.

In Count IX, Plaintiff asserts the City retaliated against her, in violation of the ADA and the FHA because it declined to pave Cherry Street in October 2015. *Id.* at ¶¶ 288-293.

Counts X and XI allege deprivation of her civil rights pursuant to 42 U.S.C. § 1983. Specifically, in Count X, Plaintiff alleges the City deprived Plaintiff of her property when, in 1991 and 1993, it declared Cherry Street not to be a public street and in 1995 when it installed "no parking" signs on Cherry Street. *Id.* at ¶¶ 294-307.

In Count XI, Plaintiff claims that she has been denied Equal Protection because the City in 1991 and 1993 graded, excavated, and laid a gravel driveway to facilitate access to her neighbors' properties while refusing to pave her section of Cherry Street. *Id.* at ¶¶ 308-319.

In Count XII, Plaintiff asserts a claim for "Public Nuisance" arising out of the City's failure to pave her portion of Cherry Street and its failure to remove shrubbery from the right of way. *Id.* at ¶¶320-3325.

The final two counts sound in Kentucky law. In Count XIII, Plaintiff alleges negligence resulting in injury when she fell on ice in the alley adjoining her property on January 11, 2016.

*Id.* at ¶¶ 326-335.

Count XIV asserts a claim of sexual harassment in violation of Kentucky law against James Ediger. *Id.* at ¶¶ 336-342.

Finally, Plaintiff seeks compensative, as well as punitive damages from both Defendants.

The City and Ediger seek dismissal of all claims alleged herein, arguing that Plaintiff fails to state any claim for which relief can be granted. [Docket Nos. 15 and 60]. The motions have been fully briefed by the parties, and now await decision [Docket Nos. 15-1, 35, 63, 82, 83 and 84].

## II.

The purpose of a motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). For purposes of dismissal pursuant to Fed. R. Civ. P 12(b)(6), the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

Dismissal of a complaint is warranted if it fails to state a claim upon which relief can be granted. With respect to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Sixth Circuit Court of Appeals explained in *Estate of Ezra G. Smith v. United States,* 509 Fed.Appx. 436 (6th Cir. 2012) that:

> [t]he Supreme Court held in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) that to survive a motion to dismiss under Rule 12(b)(6) a complaint must contain (1) enough facts to state a claim to relief that is plausible; (2) more than a formulaic recitation of a cause of actions' elements; and (3) allegations that suggest a right to relief above a speculative level. (internal citation omitted)...A claim has facial plausibility when the plaintiff pleads factual content that allows the

4

> court to draw the reasonable inference that the defendant is liable for the misconduct alleged. (internal citation omitted)...For a complaint to survive a motion to dismiss, the non-conclusory factual content and the reasonable inferences from that content, must be plausibly suggestive of a claim entitling a plaintiff to relief. (internal citation omitted) Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief.

*Estate of Ezra G. Smith,* 509 Fed.Appx. at 439.

"Conclusory assertions, *e.g.*, that...[the] defendants engaged in 'outrageous' and 'unlawful' behavior...are insufficient to state a claim that is plausible on its face." *Ogle v. Columbia Gas Transmission, LLC,* 513 Fed.Appx. 520, 522-523 (6th Cir. 2013). The "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Technologies, Inc.,*520 F.3d 516, 519 (6th Cir. 2008) (internal citation omitted). As the Sixth Circuit stated in *Bishop:*

> [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient. (internal citations omitted) The factual allegations must be enough to raise a right to relief above the speculative level; they must state a claim to relief that is plausible on its face.

*Bishop*, 520 F.3d at 519 (internal citations omitted) (emphasis original).

A complaint will withstand a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. at 1937. A complaint has "facial plausibility" if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir.2009) (*quoting Iqbal*, 129 S.Ct. at 1949).

### III.

Although Plaintiff goes around the house, exhaustively asserting various legal theories, the crux of this matter is that she wants all of Cherry Street paved, particularly the portion which fronts her home. She maintains that, because of her alleged disability, the City is obligated to pave her portion of Cherry Street so that she can more easily traverse her own property to get to Cherry Street from her preferred vantage point.

**A.    Count I fails to state a claim upon which relief can be granted.**

Plaintiff seeks a declaration that "Cherry Street is a public right of way." [Docket No. 6 at ¶219]. She explains that in 1991 and 1993, the City's Board of Adjustments "declared that portion of the street which fronts plaintiff property not to be a street for the purpose of allowing Plaintiff's neighbors to install a shed in the public right of way, which deprived Plaintiff of her interest in the easement on the public right of way." *Id.* at ¶297.

28 U.S.C. §2201, sets forth the mechanism for declaratory judgments. However, federal courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act. Generally, five factors in assessing the propriety of the court's exercise of discretion:

>  (1) whether the judgment would settle the controversy;
>  (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>  (3) whether the declaratory remedy is being used merely for the

>purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
>(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
>(5) whether there is an alternative remedy that is better or more effective.

*Omaha Property & Casualty Ins. Co. v. Johnson*, 923 F.2d 446, 447-48 (6th Cir.1991).

Plaintiff seeks a declaration that the Covington Board of Adjustments erred in its interpretation of Kentucky law back in 1991 and 1993 when it declared that Cherry Street was not a public street. [Docket No. 6 at ¶ 297]. Plaintiff, thus, seeks a declaration regarding past conduct over which this Court has no authority. Even if this Court were to declare that the Board of Adjustors misconstrued the law over thirty years ago, the undersigned could not then compel the City to re-prioritize its spending without running afoul the bright line which separates the courts from legislative functions and the spending of tax dollars. Under Kentucky law, the Covington City Commission alone is empowered to collect sufficient revenues to operate the city government through the adoption of an annual budget ordinance and by levying taxes and establishing fees and charges for city services. K.R.S. 83A.130(12); K.R.S. 91A.030(8)(a). The budget process requires the Commission members to prioritize the City's needs and to allocate City funds in order to meet those needs. This Court cannot, and should not, insert itself into what is clearly outside of its jurisdiction. At most, it would appear that Plaintiff seeks what would amount to an advisory opinion. A Declaratory Judgment, if granted, would serve no purpose. In other words, this claim does not present a "case" or a "controversy" which would warrant this Court's presence. Therefore, Count I fails to state a claim upon which relief, at the

hands of this Court, can be granted.

### B. Counts II, III, IV, V, VI, VII, X and XI are barred by the Statute of Limitations.

Counts II, III, IV, V and VII purport to assert violations of the ADA. The specific conduct alleged occurred in 1991, 1993, 1995 and 2010. Yet, Plaintiff concedes her ADA claims are governed by Kentucky's one (1) year limitations period set forth in K.R.S. 413.130 (1)(a). [Response In Opposition to Motion to Dismiss, Docket No. 35, p. 9]. Therefore, by her own calculation, Plaintiff's claims fall well outside of the applicable period of limitation.

In an attempt to resurrect these particular claims, Plaintiff argues that the City's conduct represents a "continuing violation" and, as such, are not time-barred. The continuing violation doctrine is strictly construed and rarely applied in the Sixth Circuit. *See, Sharpe v. Cureton,* 319 F.3d 259, 267 (6th Cir. 2003). Merely waving the wand of "continuing violation" is not enough to weave distinct and separate acts into a continuous narrative which eschews a one-year deadline. To establish a continuing violation, Plaintiff must establish:

> 1. The defendant's wrongful conduct continued after the precipitating event that began the pattern;
> 2. Injury to the plaintiff must have continued to accrue after that event; and
> 3. Further injury to the plaintiff must have been avoidable if the defendant had at any time ceased its wrongful conduct.

*Tolbert v. Ohio Department of Transportation,* 172 F.3d 934, 940 (6th Cir. 1999). In addition, the test draws a clear distinction between conduct and injury. *Id.* There must be present conduct, not merely residual effects of a time-barred action. *Broom v. Strickland,* 573 F.3d 553, 555 (6th Cir. 2009). "It should be clear that without a specific, allegedly discriminatory

8

act against [the plaintiff], mere existence of an alleged policy…will not toll the running of the statute of limitations." *Tolbert,* 172 F.3d at 941. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* "Mere continuity" of injury is not sufficient to invoke the continuing violations doctrine. *EEOC v. Penton Indus. Publishing,* 851 F.2d 835, 838 (6th Cir. 1988).

The single act of denying a handicap parking sign, or posting a "no parking" sign, or making administrative findings that Cherry Street is not a public street, or declining to pave Plaintiff's portion of Cherry Street while paving other sections, in 1991, or 1993, or 1995, or 2010, cannot, constitute a continuing violation for each day the impact of those decisions is felt by Plaintiff. The alleged ongoing impact of each of these separate decisions does not somehow convert them into a "continuing violation" or establish an "overarching policy of discrimination." Courts within the Sixth Circuit have rejected this approach. *See e.g. Ohio Midland, Inc. v. Ohio Department of Transportation,* 286 Fed. App'x 905, 913 (6th Cir. 2008). To do otherwise would, in effect, eradicate any period of limitation.

Plaintiff has failed to allege a "continuing violation." As Defendants point out, Plaintiff has not alleged that the City denied her a handicap parking permit since June 1995 or that the City revisited that decision during the limitations period. Nor has she alleged that the City posted no parking signs since June 1996 or that it reconsidered that decision within the limitations period. Likewise, Plaintiff does not contend that the City performed improvements to Cherry Street since 2010 or that it has reconsidered that issue within the limitations period. She has, rather, alleged a series of individual decisions and discrete actions, by different people at different times, and has futilely tried to create a common narrative thread of discrimination. Yet,

9

she fails to allege any relationship between the time-barred conduct and the 2015 Street Improvement Contract. Consequently, Counts II, III, IV, V, VI, VII, X, and XI must be dismissed as time-barred.

### C. Counts II, III, IV, VI, VII, VIII, IX, X, XI and XII fail to state claims upon which relief may be granted.

#### I. Plaintiff's fails to state a claim for violations of the ADA.

The ADA requires that a city perform new street construction so that the new streets or new construction will be ADA-compliant. The ADA also imposes upon cities a duty to bring existing streets into compliance with the ADA by making the streets accessible to persons with disabilities, such as by installing curb cuts for wheelchair ramps. *See generally,* 28 C.F.R. § 35.151.

With regard to her claims under the ADA, Plaintiff alleges her disability makes it difficult for her to travel up and down the slope on her own property in order to reach the paved portion of Cherry Street. She finds it easier to enter at a different section of Cherry Street which adjoins a flatter portion of her own property. Therefore, she contends that the ADA compels the City to pave a different section of Cherry Street in order to make it easier for her to reach this thoroughfare. The difficulty, thus, stems from the topography of Plaintiff's own property. A stunning concept, indeed.

Assuming that Plaintiff, does in fact, satisfy the definition of "disabled" under the ADA, the question remains as to whether the Defendants violated the ADA. Plaintiff fails to allege any defect in Cherry Street itself (such as lack of handicap ramps) which makes Cherry Street inaccessible. Plaintiff must, therefore, contend the ADA imposes upon a City a duty to modify a

10

street to ease the burden of an allegedly disabled person in getting to and from the street. Plaintiff cites to no authority supporting that concept. Yet she has not and cannot cite legal authority to support her claim that a city must modify its streets in order to make it easier for a person to cross his or her own property in order to reach the street.

*Jones v. City of Monroe*, 341 F.3d 474 (6th Cir. 2003) is instructive. In *Jones*, the plaintiff sought to compel the City to provide free parking in front of her workplace due to her disability. The Court rejected the claim, stating, "[s]he does not have a right to free downtown parking that allows her access to her destination of choice." *Id.* at 479.

Here, as Plaintiff perceives it, the problem is not with the street, but with her own property. Because of the topography of her own yard, Plaintiff's "destination of choice" may be a different section of Cherry Street, but the City is under no duty, pursuant to the ADA or otherwise, to ease her journey across her own property to reach that section of Cherry Street. Therefore, Plaintiff's ADA claims, as alleged in Counts II, III, IV and IX of the Amended Complaint, do not state a claim upon which relief may be granted.

    ii.    **Plaintiff's fails to state a claim for violations of the FHA.**

The FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services in connection with such dwelling...." 42 U.S.C. § 3604(f)(2). Neither Count VI or Count VIII, which purport to bring claims under the FHA, state or even allude to "the sale or rental of a dwelling". Only the most tortured interpretation of the FHA, so as to include within "provision of services in connection with such dwelling" the construction of a street, would bring these claims within the purview of the FHA. However, there is no authority to support this

11

interpretation. The City has not, therefore, discriminated in the "provision of services" and the FHA has not been implicated, much less violated. Therefore, these claims must be dismissed,

### D. Plaintiff's claims under Kentucky law fail to state a claim for which relief can be granted.

In Count XII of her Amended Complaint, Plaintiff claims the City's failure to pave her portion of Cherry Street and its failure to remove shrubbery from the right of way is a "public nuisance". Her Amended Complaint does not cite any particular statute or case in this regard. Regardless, the gravamen of this lawsuit is the City's refusal to expend roughly $175,000 in tax revenues to improve one section of one street to benefit one resident. Plaintiff does not contend the City improperly repaired her section of Cherry Street. Rather, she complains the City Commission refused to spend money to undertake repairs to Cherry Street. The decision whether to spend public monies on a particular road improvement is a legislative function. K.R.S. 65.2003(3) provides immunity to a city for losses resulting from "…any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority…"

Notably, Plaintiff does not dispute that a city is immune from liability for the exercise of legislative discretion. Nor does she deny that immunity exists for the City's alleged failure to enforce an ordinance. Instead, Plaintiff argues that street maintenance is not a "discretionary function" for which officials enjoy immunity, but, rather a "ministerial duty". Yet, she cities no cases in which a court was empowered to compel a municipality to spend its funds to pave or finish a particular road.

In another attempt to split hairs and somehow avoid the doctrine of immunity, Plaintiff also attempts to re-cast her claim as an alleged failure to maintain. However, her Amended

Complaint is clearly not aimed at the inadequate repairs of Cherry Street, but from the legislative decision not to provide funds to repair her section of Cherry Street. Accordingly, Plaintiff's claim for a public nuisance is barred by governmental immunity.

Count XIII presents a claim for negligence under Kentucky law. Plaintiff claims the City performed an improvement to Cherry Street in 2010 [Doc. 6 at ¶330]. Plaintiff also claims this caused a water run-off problem across Cherry Street to the alley. [*Id.* at ¶331]. Plaintiff contends ice would form in the alley every winter when the temperatures dropped. [*Id.*]. Plaintiff complains she was well aware of this ice problem, as she "had to call the City every year, each time ice formed in the alley." [*Id.* at ¶332]. On January 11, 2016, Plaintiff ventured onto the allegedly ice-covered alley, slipped on the ice and fell. [*Id.* at ¶¶333-334].

Even before an analysis of Plaintiff's comparative fault and the City's immunity, Count XIII fails due to Plaintiff's failure to comply with her mandatory duty under K.R.S. 411.110, which provides:

> No action shall be maintained against any city in this state because of any injury growing out of any defect in the condition of any bridge, street, sidewalk, alley or other public thoroughfare, unless notice has been given to the mayor, city clerk or clerk of the board of aldermen in the manner provided for the service of notice in actions in the Rules of Civil Procedure. This notice shall be filed within ninety (90) days of the occurrence for which damage is claimed, stating the time of and place where the injury was received and the character and circumstances of the injury, and that the person injured will claim damages therefor from the city.

Under K.R.S. 411.110, "the giving of notice as required by the statute is mandatory and is a condition precedent to the bringing of a suit against the City." *Berry v. City of Louisville*, 249 S.W.2d 818, 819 (Ky. 1952), *citing, Ballinger v. City of Harlan*, 294 Ky. 72, 170 S.W.2d 912

13

(1943). "Literal compliance with the statute is necessary." *Baldridge v. City of Ashland*, 613 S.W.2d 430, 431 (Ky. App. 1981) The city's actual or constructive notice of the defect will not suffice. *Id.*

Not once in the 58 pages which form Plaintiff's Amended Complaint does she allege that she or her counsel, former or current, provided any City official with the notice required by the statute. Indeed, in her response to the City's dispositive motion, she admits that she "cannot in good conscience argue that it [*sic*] has provided the notice required of KRS 411.110 and therefore cannot argue that it [*sic*] has stated a claim for relief for negligence against Defendant." [Doc. 35, p. 21].

Accordingly, this claim will be dismissed.

### E. Plaintiff has failed to state a claim against Defendant James Ediger for which relief can be granted.

In Count VIII of the Amended Complaint, Plaintiff alleges that Defendant Ediger discriminated against her on the basis of her gender in violation of the FHA. As set forth *supra*, the facts alleged in this case do not implicate the FHA as the Act is intended to protect individuals who are members of the enumerated protected classes contained within 42 U.S.C.A. § 3604 when they are attempting to rent or purchase homes, or when seeking to compel the property owner to maintain the premises as appropriate. In this case, Ms. Bullock already owns her home, and Mr. Ediger was not and is not involved in selling it to Ms. Bullock or anyone else. Nor is he involved in renting any part of the property to Ms. Bullock or anyone else. Therefore, this claim is not viable.

As for Count XIV, in which Plaintiff alleges that Ediger sexually harassed her in violation

of Kentucky law,

It is well established that pendent jurisdiction "is a doctrine of discretion, not of plaintiff's right," and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons. *City of Chicago v. International College of Surgeons,* 118 S.Ct. 523, 533 (1997) (internal citations omitted). The supplemental jurisdiction statute codifies these principles and confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise:

> ( c)The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367 ( c).

Having dismissed all the other claims herein, including the federal claim against Ediger, the Court is not inclined to exercise jurisdiction over this claim.

### IV.

As motion to dismiss is based solely upon the complaint, the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than whether the plaintiff will

ultimately prevail. *Roth Steel Prods v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). In this case, Plaintiff's impassioned pleas for equality, while moving, lack the necessary factual foundation to withstand 12(b)(6) scrutiny. Her dissatisfaction with the City's legislative prerogative and its determination of spending priorities do not state a claim for which this Court can grant relief.

Accordingly, **IT IS HEREBY ORDERED** that the City of Covington's Motion to Dismiss [Docket No. 15] and James Ediger's Motion to Dismiss [Docket No. 60] be **SUSTAINED** and Plaintiff's Complaint and Amended Complaint be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket of this Court.

This is a **FINAL** and **APPEALABLE** Order.

This 14th day of November, 2016.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District